[Sac. No. 7851. In Bank. Apr. 17, 1970.]

ROBERT W. PIKE, a Minor, etc., et al., Plaintiffs and Appellants, v. FRANK G. HOUGH COMPANY et al., Defendants and Respondents.

## COUNSEL

Goldstein, Barceloux & Goldstein, P. M. Barceloux, Burton J. Goldstein, Albert E. Levy and Ralph Golub for Plaintiffs and Appellants.

Edward I. Pollock, Robert E. Cartwright, Theodore A. Horn, Marvin E. Lewis, William H. Lally, Ned Good and Leonard Sacks as Amici Curiae on behalf of Plaintiffs and Appellants.

Rich, Fuidge, Dawson, Marsh & Morris and Dennis C. Noonan for Defendants and Respondents.

## OPINION

**MOSK, Acting C. J.**—On July 15, 1964, at 3:10 a.m., Robert Pike was killed when he was struck by a Hough Model D-500 Paydozer, which was being used in the construction of the Oroville Dam. Pike was working the night shift as a "spotter" for Oro-Dam Constructors, and his assignment was to direct dump trucks in the area in which dumped fill was to be spread and tamped down by the paydozer. On the morning of the accident, the men were filling in a corner of the dam surface, and in doing so it was necessary for the paydozer to go forward and then backward within a short distance to accomplish the spreading and tamping of the earth. Decedent was some 30 to 40 feet behind the paydozer, standing on an angle with his back to the paydozer when it backed up and struck him.

Decedent's widow and minor children brought this action for wrongful death against the manufacturer of the paydozer. The case was tried to a

jury. Plaintiffs sought to establish the liability of the defendant on either a negligence or a strict liability theory, based on the design of the paydozer. At the conclusion of plaintiffs' case, defendant moved for a nonsuit which was granted.[1] Plaintiffs appeal.

■ As we have consistently pointed out, a "nonsuit in a jury case or a directed verdict may be granted only when disregarding conflicting evidence, giving to the plaintiffs' evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiffs' favor, it can be said that there is no evidence to support a jury verdict in their favor." (*Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578, 583 [75 Cal.Rptr. 652, 451 P.2d 84].) Thus, the issue before us in this appeal is whether the evidence presented by plaintiffs, viewed favorably to their cause, was sufficient to support a jury verdict finding that defendant was liable to plaintiffs for negligently designing the paydozer or that defendant was strictly liable to plaintiffs for defects in the paydozer causing decedent's death.

The record establishes the following evidence most strongly in favor of plaintiffs: The area in which the accident occurred was well illuminated with mercury lights and visibility was good despite the hour of the morning. When decedent was struck, the paydozer was in the process of reversing to position itself to then move forward to spread and tamp down fill; behind the paydozer decedent was directing dump trucks in depositing fill which was to be spread and tamped by the paydozer at a later time. Prior to backing up, the operator of the paydozer, who had not observed Pike for about five minutes, looked to the rear to ascertain if it was clear, but he did not see Pike, who was standing 30 to 40 feet behind the vehicle and wearing a luminous jacket. The operator testified that there was a substantial blind spot to the rear of the paydozer because of its design. He also testified that the lighting was clear enough so that workers on the other side of the dam were visible.

The Hough paydozer was a large, noisy earth-moving machine. It was designed to move backward as well as forward and, as here, to perform in confined areas. It was equipped with two white headlights, and, on the rear, two red taillights and two white lights. At the time of the accident, only the red taillights were illuminated; the headlights were turned off because the dump truck operators complained of the glare, and the rear white lights were off because they blinded other equipment operators

---

[1]International Harvester Company, which owns the stock of Frank G. Hough Company, was also named a defendant and awarded a nonsuit. Its nonsuit, granted on the ground that it played no part in the manufacture of the paydozer, is not contested on this appeal.

working in the vicinity. The paydozer had no rearview mirrors and no audible or visible backup warning signal.

Robert Snyder, a registered mechanical engineer, appeared as an expert for plaintiffs. According to his testimony, the design of the paydozer with its large engine box to the rear created a blind area behind the paydozer of such dimension that, if the operator looked behind him while sitting in the cab, he could not see a man 6 feet tall standing anywhere between 1 and 48 feet to the rear of the machine. The blind area extended laterally at least 10 feet to each side of the midline of the paydozer. Snyder testified that the blind area could be reduced from a rectangle 48 feet by 20 feet to a cone-shaped area with a maximum length behind the machine of 12 feet by installation of two rearview mirrors located 4 feet out from each side of the cab. The 4-foot distance, he pointed out, would not project the mirrors beyond the vertical line of the huge tires on the tractor. The mirrors he described were similar to those he had seen on ditchdigging equipment. He also recommended a blinking amber light or a tooting horn to alert persons within the remaining blind area.

In nonsuiting plaintiffs on their negligence cause of action, the trial court held as a matter of law that a vehicle intended to move backward is not negligently designed although the operator cannot see a man 30 to 40 feet behind him in the direct path of the vehicle and although simple mirrors and lights could alleviate the danger. The court was in error; this was essentially a question of fact for determination by the jury.

The duty of a manufacturer with respect to the design of products placed on the market is defined in the Restatement Second of Torts, section 398: "A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design." Thus, the manufacturer must use reasonable care " 'to so design his product as to make it not accident-proof, but safe for the use for which it was [*sic*] intended.' " (*Varas* v. *Barco Mfg. Co.* (1962) 205 Cal.App.2d 246, 258 [22 Cal.Rptr. 737], quoting from 76 A.L.R.2d 91, 94.) What is "reasonable care," of course, varies with the facts of each case, but it involves a balancing of the likelihood of harm to be expected from a machine with a given design and the gravity of harm if it happens against the burden of the precaution which would be effective to avoid the harm. (2 Harper and James, The Law of Torts (1956) § 28.4, p. 1542.)

Applying the foregoing standards to the case at bar, it would

seem a jury could conclude that a manufacturer of a vehicle intended to go backward should have been aware that the machine's structural design made it impossible for the operator to see a man standing anywhere between 1 and 48 feet behind the machine and in its direct path. And, having so found, a jury could decide that a manufacturer who failed to correct this deficiency with two rearview mirrors, or any comparable device, violated his duty to produce a product reasonably safe for its intended use. Although that result may not have been compelled, the evidence was sufficient to justify such findings, and plaintiffs need do no more than produce such evidence to avoid a nonsuit.[2]

Although no cases in California or other jurisdictions have considered facts identical to those in the instant action, the weight of authority supports a finding of negligent design. In *Zahora* v. *Harnischfeger Corp.* (7th Cir. 1968) 404 F.2d 172, the circuit court reversed a summary judgment for defendants under somewhat comparable circumstances. While plaintiff was looking into the malfunctioning in the bridge of a crane, the operator moved the crane and crushed him against the cab. The operator testified that he could not see plaintiff and that it was probably because the bottom half of the door to the cab was metal, so that his vision of the bridge was restricted. On the basis of this evidence, the court stated: "Viewing the implications and inferences of the operator's deposition in a light most favorable to the plaintiff, we find his comments suggest it is at least disputable whether or not the cab design permitted the operator that amount of vision necessary to the safe operation of the crane." (*Id.* at p. 177.) In the case at bar, the trial court granted a nonsuit, rather than a summary judgment, but these plaintiffs' evidence was stronger than that in *Zahora.* Here no reliance on mere "implications and inferences" is required, for the expert witness testified that there was a definite massive blind area behind the paydozer, but that installation of two mirrors would have made decedent visible to the operator long before the point of impact.

Our recent case of *Menchaca* v. *Helms Bakeries, Inc.* (1968) 68 Cal.2d 535 [67 Cal.Rptr. 775, 439 P.2d 903] lends support to plaintiffs' position that they were wrongfully nonsuited. We held there that an issue of jury dimensions was raised as to whether a bakery truck was negligently equipped in lacking mirrors to correct a blind spot. "Considerable evidence indicated that the truck had been negligently equipped. Defendant planned and intended the truck to attract children to purchase bakery products from

---

[2]Of course, plaintiffs must show causation as well as breach of duty. But Snyder testified that the blind spot would have been reduced to 12 feet with mirrors, a distance beyond which the decedent was positioned; that testimony should have been sufficient to establish that the defendant's negligent failure of design caused the decedent's death. There is no serious issue of causation raised on this appeal.

it; defendant knew that a substantial blind spot in front of the truck obscured the vision of the driver; defendant nevertheless equipped the truck with a mirror that revealed to the driver only the central third of the [front] bumper. Surely defendant bore an obligation to equip the truck so as to provide for its safe operation and avoid danger to its expected customers, who were small children. . . . The testimony showed that Richard became the unfortunate victim of defendant's alleged breach of duty. Richard, who was 36 inches tall, was standing immediately in front of the truck and probably did not come within the driver's vision because of the truck's blind spot; yet additional mirrors would have made him clearly visible. The court erred, therefore, in removing from the jury's consideration the factually disputed issue of whether or not the truck was negligently and dangerously equipped." (*Id.* at pp. 540-541.) By parity of analysis, plaintiffs' evidence in the instant action created a triable issue whether the paydozer was negligently and dangerously designed without mirrors to provide a range of vision for the operator to avoid accidents in backing up.

■ Other California cases recognize a cause of action against a manufacturer for negligent design of a product and support plaintiffs' contention that failure to provide reasonable safety devices may constitute negligence. "[F]or the purpose of showing that there has been a failure to comply with the standard of due care, it is proper to introduce evidence as to the necessity and feasibility of changes in the design of parts of a machine so as to enhance the factor of safety." (*Varas* v. *Barco Mfg. Co.* (1962) *supra*, 205 Cal.App.2d 246, 259.) In *Varas*, it was held that evidence, showing that the threads on the gas cap of an earth-compacting machine permitted oil and gas to spray onto the operator while other feasible threads would not, was sufficient to avoid a nonsuit in an action for personal injuries to the operator resulting from his catching fire due to the oil and gas on his body. Similarly, *Reynolds* v. *Natural Gas Equipment, Inc.* (1960) 184 Cal.App. 2d 724 [7 Cal.Rptr. 879] held that it was error to nonsuit a plaintiff who offered evidence that the explosion causing his injuries resulted from the unexplained closing of the air cap on a burner which could have been avoided by a safety weld or a set screw in the design of the burner. Other cases which hold evidence of absence of feasible safety features in design causing plaintiff's injuries was sufficient to avoid a nonsuit include *Boeing Airplane Company* v. *Brown* (9th Cir. 1961) 291 F.2d 310; *Robinson* v. *Reed-Prentice Corporation* (9th Cir. 1961) 286 F.2d 478; and *Darling* v. *Caterpillar Tractor Co.* (1959) 171 Cal.App.2d 713 [341 P.2d 23].

The foregoing authorities and the case at bar are distinguishable from *Hatch* v. *Ford Motor Co.* (1958) 163 Cal.App.2d 393 [329 P.2d 605]. In *Hatch,* plaintiff, a young child, lost his eye when he walked into a nine and three-fourths inch hood ornament on a parked Ford automobile. The court

affirmed a judgment for defendant entered upon a general demurrer, but carefully delineated the reasons for its holding: "There is not involved in this case any question of a defect which created a risk of injury to its driver or passengers therein or to persons upon the highway through its use in the normal manner for which it was manufactured to be used . . . . If we were to hold that there was a duty to render a vehicle safe to collide with rather than simply a duty to so manufacture it as to make it safe for the use for which it is intended, i.e., to move upon the highways or to be safely parked, that duty would apply not only to ornaments . . . but to functional parts of the vehicle. . . . In other words, each case in which a person collided with a standing vehicle and received some injury from a part of the vehicle which injury he might not have sustained had the vehicle been constructed in some other manner would raise a question of fact as to whether the manufacturer was liable to that person." (*Id.* at pp. 396-397.)

By contrast, in the instant case, a jury could find the decedent was killed as a result of defects in the design of the paydozer which created a substantial and unreasonable risk of injury to persons working in the vicinity of the paydozer while it was engaged in its normal backing-up operations necessary to the moving and compacting of earth.

Defendant contends that the danger of being struck by the paydozer was a patent peril and, therefore, that it had no duty to install safety devices to protect against an obvious danger. We do not agree. First, although all vehicles contain the potential of impact, it is not necessarily apparent to *bystanders* that the machine operator is incapable of observing them though they are 30 to 40 feet behind the vehicle and in its direct path. The danger to bystanders is not diminished because the purchaser of the vehicle is aware of its deficiencies of design. The manufacturer's duty of care extends to all persons within the range of potential danger. Second, the obviousness of peril is relevant to the manufacturer's defenses, not to the issue of duty. If a bystander does not exercise due care to protect himself from an evident peril, he may be contributorily negligent. (*Brooks* v. *Allis-Chalmers Mfg. Co.* (1958) 163 Cal.App.2d 410, 415 [329 P.2d 575].) But the issue of contributory negligence is one normally for the jury; clearly the evidence here did not justify nonsuiting plaintiffs on the ground of decedent's contributory negligence as a matter of law. (See *Varas* v. *Barco Mfg. Co.* (1962) *supra,* 205 Cal.App.2d 246, 262-263.) Indeed, " '[w]here a person must work in a place of possible danger the amount of care he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case.' " (205 Cal.App.2d at p. 263, quoting *Johnson* v. *Nicholson* (1958) 159 Cal.App.2d 395, 410 [324 P.2d 307].)

■ Finally, even if the obviousness of the peril is conceded, the modern approach does not preclude liability solely because a danger is obvious. "Today, however, the negligence principle has been widely accepted in products liability cases; and the bottom does not logically drop out of a negligence case against the maker when it is shown that the purchaser knew of the dangerous condition. Thus if the product is a carrot-topping machine with exposed moving parts, or an electric clothes wringer dangerous to the limbs of the operator, and if it would be feasible for the maker of the product to install a guard or a safely release, it should be a question for the jury whether reasonable care demanded such a precaution, though its absence is obvious. Surely reasonable men might find here a great danger, even to one who knew the condition; and since it was so readily avoidable they might find the maker negligent. Under this analysis the obviousness of a condition will still preclude liability if the obviousness justifies the conclusion that the condition is not unreasonably dangerous; otherwise it would simply be a factor to consider on the issue of negligence. . . . The greatest conceptual obstacle to recovery . . . comes in the case where the buyer himself is hurt by the article. . . . Surely it is well within the framework and spirit of [recent] common law modifications to require reasonable care to protect even the buyer himself from what may be foreseen as an unreasonable danger to him. But even if courts are unwilling to go so far, without legislation, in the case of the adult buyer or user, the existing law of negligence demands this duty of care where *others* are threatened by want of a feasible safety device wherever the foreseeable danger to them is unreasonable." (Harper and James, The Law of Torts, supra, § 28.5, pp. 1543, 1545.)

To the same effect see 71 Yale Law Journal 816, in which Professor Noel wrote (at p. 838): "Any definite requirement that the defect or the danger must be latent seems to revert to the concept that a chattel must be 'inherently' dangerous, and this concept has been replaced under the modern decisions, by the rule that the creation of any unreasonable danger is enough to establish negligence. Under the modern rule, even though the absence of a particular safety precaution is obvious, there ordinarily would be a question for the jury as to whether or not a failure to install the device creates an unreasonable risk."

■ We conclude, therefore, that it was error to nonsuit plaintiffs in their cause of action based on the negligent design of the paydozer. The issue should have gone to the jury. We now discuss their cause of action based on a strict liability concept.

California has pioneered in the development and extension of the theory that manufacturers are strictly liable in tort for injuries to persons caused by defects in their products. (See *Escola* v. *Coca Cola Bottling Co.* (1944) 24 Cal.2d 453, 461-468 [150 P.2d 436], concurring opinion of Traynor, J.)

In our landmark opinion in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], we held that "[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." In *Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256 [37 Cal. Rptr. 896, 391 P.2d 168], we applied such strict liability to retailers, and in *Elmore* v. *American Motors Corp.* (1969) *supra,* 70 Cal.2d 578, 585-587, we extended protection beyond users and consumers of defective products to bystanders "within the risk of the maker's enterprise."

Here the trial court held as a matter of law that the paydozer was not defectively designed and that the doctrine of strict liability was inapplicable. We cannot agree. The Restatement Second of Torts, section 402A succinctly recites the standard for strict liability applicable to manufacturers: "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer [or bystander],[3] or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." In the instant action, plaintiffs contend that the paydozer contained a fundamental defect of design which made it unreasonably dangerous for its intended use, in that the operator could not see persons working behind him within a rectangular area 48 feet by 20 feet.

Most reported cases in California and other jurisdictions have applied strict liability to products containing defects in their manufacture; few have involved defects in design. However, there is no rational distinction between design and manufacture in this context, since a product may be equally defective and dangerous if its design subjects protected persons to unreasonable risk as if its manufacture does so. Indeed, in *Greenman* v. *Yuba Power Products, Inc.* (1963) *supra,* 59 Cal.2d 57, 64, we held that plaintiff could recover on a strict liability theory if he proved "that he was injured while using the Shopsmith in a way it was intended to be used as a result of a defect in *design and manufacture* . . . ." (Italics added.)

A recent California case expressly holds that a product may be defective if it lacks safety devices necessary to its reasonable safety. In *Garcia* v. *Halsett* (1970) 3 Cal.App.3d 319 [82 Cal.Rptr. 420], the plaintiff sued the owner of a launderette for injuries sustained while using one of the washing machines in the establishment. Plaintiff waited several minutes

---

[3] As noted above, since *Elmore* v. *American Motors Corp.* (1969) *supra,* 70 Cal.2d 578, California courts extend protection to bystanders.

after the machine had stopped its spin cycle before opening the door to unload his clothing. After unloading one handful, he inserted his hand into the washer a second time and the machine suddenly started spinning. His arm became entangled in the clothing and he sustained injuries. The evidence indicated that the accident could have been avoided by installation of a common two-dollar micro switch which would have automatically shut off the electricity in the machine when the door was opened. The trial court refused to instruct the jury on strict liability. The Court of Appeal reversed, holding the evidence sufficient to justify findings that the washing machine was defective in its design because it lacked a micro switch and that the owner of the launderette, "in the same manner as a manufacturer, retailer, or lessor," was strictly liable in tort. (*Id.* at p. 326.)

Persuasive authorities in other jurisdictions have also reached the conclusion that products lacking safety devices may be defective. In *Wright* v. *Massey-Harris, Inc.* (1966) 68 Ill.App.2d 70 [215 N.E.2d 465], defendant's motion to dismiss was reversed on the ground that plaintiff had stated a good cause of action in both negligence and strict liability, based on the design of the defendant's cornpicker. "The present case involves a claimed defect in design rather than a defect in manufacture and we interpret Suvada[4] to mean that the strict liability imposed upon a manufacturer includes injuries which arise from defects in design as well as defects in manufacture. Whether the design defect in the present case is of a nature upon which liability can be imposed involves the factual question of whether it creates an unreasonably dangerous condition, or, in other words, whether the product in question has lived up to the required standard of safety." (*Id.* at p. 470.) The defects alleged in the cornpicker were that it lacked a shield over the area in which ears of corn could jam in the chain mechanism and a guard over the shucking rollers from which ears of corn were manually extracted. Thus, on the basis of a case no broader in scope than *Greenman,* the Illinois court applied strict liability to a machine defective in design because it lacked safety devices which would have reduced the risk of harm. (Also see *Ilnicki* v. *Montgomery Ward Company* (7th Cir. 1966) 371 F.2d 195; *Williams* v. *Brown Mfg. Co.* (1968) 93 Ill.App.2d 334 [236 N.E.2d 125].) We adapt a similar rule to this case. Whether the paydozer was unreasonably dangerous due to faulty design when it left the hands of the manufacturer is clearly a question of fact to be determined by the jury.

Furthermore, California cases provide support by analogy for the proposition that products designed without necessary safety devices may be

---

[4]*Suvada* v. *White Motor Company* (1965) 32 Ill.2d 612 [210 N.E.2d 182]. *Suvada,* like its *Greenman* counterpart in California, established the liability of sellers of defective and unreasonably dangerous products without privity of contract.

found defective. In *Canifax v. Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 53 [46 Cal.Rptr. 552], it was held that "a product, although faultlessly made, may nevertheless be deemed 'defective' under the rule [in Restatement Second of Torts, section 402A] and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given." (See also *Barth v. B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 244-245 [71 Cal.Rptr. 306]; Rest. 2d Torts, § 402A, com. j, at p. 353.) No rationale has been suggested to justify imposing strict liability with respect to a faultlessly made product which is unreasonably dangerous because it is produced without safety warnings, while refusing to impose strict liability with respect to a product which is unreasonably dangerous because it is produced without safety devices.

Of course, we do not decide whether the paydozer is in fact unreasonably dangerous for its intended use, but only that plaintiffs' evidence was sufficient to support a jury verdict in their favor. A jury could decide that an earth-moving machine with a 48-foot by 20-foot rectangular blind spot was dangerous "to an extent beyond that which would be contemplated by the ordinary consumer who purchases it [or by a bystander], with the ordinary knowledge common to the community as to its characteristics." (Rest. 2d Torts, § 402A, com. i, at p. 352.)

The judgment for Frank G. Hough Company is reversed. The judgment is affirmed as to International Harvester Company. Plaintiffs are to recover their costs on appeal.

McComb, J., Peters, J., Tobriner, J., Burke, J., Sullivan, J., and Peek, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Acting Chairman of the Judicial Council.