**Wilkes WIRTH, Plaintiff-Appellant,**

v.

**CLARK EQUIPMENT COMPANY, a corporation, Defendant-Appellee.**

**No. 25293.**

United States Court of Appeals, Ninth Circuit.

March 16, 1972.

Rehearing Denied April 18, 1972.

Raymond J. Conboy (argued), Frank Pozzi, of Pozzi, Wilson & Atchison, Portland, Or., for plaintiff-appellant.

Roland F. Banks, Jr. (argued), James F. Spiekerman, of Souther, Spaulding, Kinsey, Williamson & Schwabe, John R. Brooke, Portland, Or., for defendant-appellee.

Before HAMLIN and MERRILL, Circuit Judges, and GRAY, District Judge.*

WILLIAM P. GRAY, District Judge.

The plaintiff in this diversity action was a longshoreman on the waterfront at Portland, Oregon, whose duties required him to work as a part of a crew attending a thirty-ton motor driven wheeled vehicle, known as a van carrier, which ran over him, thereby inflicting severe injuries that included the loss of a leg. Defendant Clark Equipment Company had manufactured the van carrier and had sold it to Matson Navigation Company, in whose service it was being operated at the time of the accident.

The plaintiff sought recovery on the basis of two separate theories, namely negligence in the design and manufacture of the carrier, and strict liability by reason of the manufacture and sale of a carrier that was in an unreasonably dangerous and defective condition.

At the conclusion of the trial, the judge submitted to the jury the issue of negligence (and a verdict for the defendant resulted), but he withdrew from the jury the matter of strict liability, ruling that, as a matter of law, the plaintiff could not recover on that basis. We agree with the plaintiff's contention, asserted at the trial and on appeal, that

---

* Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

the issue of strict liability should have been submitted to the jury, and we accordingly reverse.

Much of the cargo transported by Matson's ships was packed in large wooden vans (or containers or boxes) whose dimensions were approximately 24' x 8' x 8', and whose loaded weight was many tons. The carrier concerned was designed and manufactured for the purpose of straddling such a van, lifting it from a flat bed trailer, or from the pavement, or from the top of another van, and transporting it to another location in the waterfront area. Such work requires that the carrier be a large and heavy machine, and it is, namely, 26 feet long, 13 feet wide, and 18½ feet high. It can travel at speeds up to 20 miles per hour. The operator sits in a cab at the rear of the top of the vehicle, near the motor. A representative of the defendant testified that this location of the cab was considered to be the best place to facilitate the ability of the operator to drive the carrier and handle the containers. However, because of the location of the cab, the forward view of the driver is seriously limited to the extent that he cannot see the ground for a distance of 51' 9" in front of his right front wheel. There was testimony to the effect that similar carriers "kept running into things," and that light poles and fire hydrants located in their areas of operation had to be protected by buffers of concrete or steel.

The carrier did not contain wheel guards, or "cow catchers," nor did it contain mirrors or closed circuit TV cameras and monitors for the purpose of enhancing the operator's forward vision, and the testimony was conflicting as to the practicability of such safety installations on this machine.

The noise of the engine could be heard all over the yard, a fact that provided a constant reminder of the carrier's presence, but not necessarily of its approach. The testimony indicated that Matson had affixed a bell to the carrier that was actuated when the vehicle was in motion, but this bell could not be heard if the motor was turning faster than idling.

The plaintiff's function was that of a "block man," whose duty was to disengage or engage the fasteners that held a van securely on a trailer, in order to facilitate the carrier in lifting the van from the trailer or in depositing it thereon. Thus, the plaintiff's work required him regularly to be in close proximity to the carrier.

On the occasion of the accident, the crew had completed its assignments for the day, and the driver was in process of moving the carrier to the parking area. His route took him the length of a 30-foot wide aisle that was formed by the locations of two rows of vans. As the driver turned to enter this corridor, he could see the length of it and did not observe the plaintiff; after he had proceeded the entire length of the corridor and had parked the carrier, he learned that his right front wheel had run over the plaintiff. The evidence indicated that at the time the carrier proceeded down the corridor, the plaintiff was leaning against one of the vans that formed the corridor and was having a smoke.

In light of the foregoing the trial judge was clearly justified when he ruled that " . . . there is evidence that this thing, the way it was used, was an ultra-hazardous piece of machinery, and that this condition caused Mr. Wirth damages."

■ The trial judge recognized that the law of the forum state controls the applicability of the doctrine of strict liability in a diversity case. Hardy v. Hull Corporation, 446 F.2d 34 (9th Cir. 1971). He thereupon undertook to determine how the courts of Oregon would have ruled in this situation, a task that was made difficult by the absence of any controlling statute or reported decision. His starting point, as is ours, was the fact that Oregon has expressly adopted section 402A of the Restatement (Second) of Torts, which provides, in pertinent part, that "One who sells any

product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user or consumer. . . . "[1] Heaton v. Ford Motor Co., 248 Or. 467, 435 P.2d 806 (1967).

The trial court concluded, however, that it would be an "unwarranted extension" of Oregon law to impose strict liability in favor of a bystander when the equipment was custom-built to the purchaser's specifications and contained no concealed defect.

From our own reading of Oregon law, we believe that to permit the jury in this case to find in accordance with strict liability would not have been an unwarranted extension of Oregon law, if it would have involved any extension at all.

With respect to the matter of "bystander," the Restatement discussion of section 402A contains a caveat (1) as to whether such rule covers " . . . harm to persons other than users or consumers." This caveat would, of course, include bystanders.

However, the Restatement comment *l* asserts that a "user," within the meaning of section 402A, need not have been the purchaser or the owner of the product; "He may be a member of the family of the final purchaser, *or his employee, . . . .*" (Page 354) (Emphasis added).

Moreover, the comment on the caveat (comment *o*) refers to the distinction between users and "casual bystanders," such as "employees of the retailer, or a passer-by injured by an exploding

bottle, or a pedestrian hit by an automobile." The comment then asserts that "There may be no essential reason why such plaintiffs should not be brought within the scope of the protection afforded, other than that they do not have the same reasons for expecting such protection as the consumer who buys a marketed product; but the social pressure which has been largely responsible for the development of the rule stated has been a consumers' pressure, and there is not the same demand for the protection of casual strangers." (Pages 356-7).

■ The plaintiff in this case was not a "casual stranger." He was an employee of the purchaser of the machine; his duties as block man were an integral part of the functioning of the machine; he was obliged to work in close proximity to the machine; and the safety deficiencies that the trial court found to exist in the carrier created a particular hazard to a person in the plaintiff's position. A trier of fact could readily have found that the plaintiff was a "user" of the machine and that he was no more a bystander than was the driver.

■ On the other hand, the trier of fact could find it significant that the plaintiff was not actually performing any duties at the particular moment of the accident, but instead was, in effect, "standing by," and therefore was not a user of the product. Even under these circumstances, which would label the plaintiff as a bystander, we conclude that a verdict in his favor would not be contrary to Oregon principles with respect to the law of strict liability. This

1. The full text of section 402A is as follows:
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substan-

tial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

conclusion has been influenced by several decisions, none of which are controlling, but which, together, appear to us to point the way:

(a) In Blake v. Orchards, 249 Or. 437, 437 P.2d 757 (1968), a motor driven brush cutter, manufactured by the defendant, threw a rock which hit and injured the plaintiff, who presumably was a bystander or was passing by. The trial court submitted to the jury the issue of strict liability as follows:

"You are instructed that a manufacturer who makes and sells brush cutting machinery which by reason of a defective design or inadequate guarding causes an extrahazardous condition for persons in the vicinity of its use is strictly liable to such persons for injury and damage caused by such defective design or such inadequate guarding." (Page 758).

The jury found for the plaintiff, but the resulting judgment was reversed by the Oregon Supreme Court because the plaintiff had pleaded only negligence and had not asserted a cause of action for strict liability. However, the opinion permits the inference that the court had no criticism of the above quoted instruction as stating the law of strict liability that would be applicable to the case under appropriate pleading.

(b) Brizendine v. Visador Co., 305 F. Supp. 157 (D.Oregon 1969), involved a door light that had been manufactured by the defendant and installed on a door of a church. As one young man undertook to open the door, he lost his balance and his hand struck the glass of the door light. The glass shattered and some of its particles flew into the face of the plaintiff, who had been standing at or near the door. Judge Kilkenny, trying the case without a jury and in applying Oregon law, found to be present all of the factors necessary for the imposition of strict liability and rendered judgment for the plaintiff accordingly.

(c) In Cornelius v. Bay Motors, Inc., 484 P.2d 299, 302–303 (Or.1971), the Oregon Supreme Court assumed, without deciding, that the benefits of the rule of section 402A extend to bystanders; but it expressly reserved ruling upon the matter because such a determination was not necessary to the decision.

(d) The opinion in Pike v. Frank G. Hough Co., 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229 (1970), was published subsequent to the decision here appealed from. The facts in the two cases are substantially identical, the Pike case involving a large "paydozer" whose function was to spread and tamp dirt fill deposited by dump trucks. The decedent, whose job was to direct the trucks to the appropriate spots for dropping their loads, was standing with his back to the paydozer and some thirty feet behind it. The driver of the paydozer, hampered by problems of visibility similar to those pertaining to the carrier here concerned, backed into the decedent and killed him. The California Supreme Court reversed a judgment of nonsuit that had been entered by the trial court under the assumption that the doctrine of strict liability was inapplicable. In the course of an extensive opinion, it was noted that California courts extend protection to bystanders in products liability cases, and the opinion concluded as follows:

"Of course, we do not decide whether the paydozer is in fact unreasonably dangerous for its intended use, but only that plaintiffs' evidence was sufficient to support a jury verdict in their favor. A jury could decide that an earth-moving machine with a 48-foot by 20-foot rectangular blind spot was dangerous 'to an extent beyond that which would be contemplated by the ordinary consumer who purchases it [or by a bystander], with the ordinary knowledge common to the community as to its characteristics.' (Rest. 2d Torts, § 402A, com. i, at p. 352)." (2 Cal.3d at 477, 85 Cal.Rptr. at 637, 467 P.2d at 237). (Bracketed clause in the opinion).

The mutual respect held by the courts of California and Oregon for the developments of the law in those states is

well known and creates a reasonable inference that the *Pike* decision would be considered to be of substantial precedential value in Oregon.[2]

We think that the custom-built concept need not be fatal to the plaintiff's case. In the first place, it was at least a question of fact as to whether the carrier was custom-built in any aspect that is relevant here. The defendant manufactured its carriers only to order, but the basic structure of the machine here concerned was as developed and advertised by the defendant in its series 510. It is true that in the manufacture of the subject carrier several modifications of the series 510 design were made at the suggestion of the purchaser; but a representative of the defendant admitted in his testimony that none of these changes had anything to do with the problem of the operator's restricted vision.

Also, even if the machine had been fully custom made, we are by no means convinced that this circumstance would prevent this plaintiff from recovery under the doctrine of strict liability. Comment *g* to section 402A of the Restatement of Torts says that the strict liability rule ". . . applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." The evidence at the trial indicated that officials of Matson were aware of the limited visibility afforded the operator of the carrier, as would be expected if the product were completely custom made. But there was no showing that the *plaintiff* had any such awareness and, as hereinabove discussed, a jury could readily find that he was an ultimate "user," within the meaning of the rule.

We quote again from the opinion in the California case of Pike v. Frank G. Hough Co., 2 Cal.3d 465, 85 Cal.Rptr. 178, 467 P.2d 229 (1970):

"Defendant contends that the danger of being struck by the paydozer was a patent peril and, therefore, that it had no duty to install safety devices to protect against an obvious danger. We do not agree. First, although all vehicles contain the potential of impact, it is not necessarily apparent to *bystanders* that the machine operator is incapable of observing them though they are 30 to 40 feet behind the vehicle and in its direct path. The danger to bystanders is not diminished because the purchaser of the vehicle is aware of its deficiencies of design." At 2 Cal.3d 473, 467 P.2d at 234, 85 Cal.Rptr. at 634 (Emphasis in the opinion).

The *Pike* opinion goes farther and suggests that ". . . even if the obviousness of the peril is conceded, the modern approach does not preclude liability solely because a danger is obvious," and that " 'Surely it is well within the framework and spirit of [recent] common law modifications to require reasonable care to protect even the buyer himself from what may be foreseen as an unreasonable danger to him.' " (2 Cal.3d at 474, 467 P.2d at 235, 85 Cal. Rptr. at 635, quoting from Harper and James, The Law of Torts, page 1545). We need not seek to determine here whether such a concept would be accepted by the courts of Oregon. Suffice it to say, at least, that it was for the jury to determine whether the nature and extent of the defects in the carrier that caused the plaintiff's injuries were obvious to him.

Reversed and remanded for a new trial in accordance with this opinion.

2. We think it of more than geographical significance that the Court of Appeals of the State of Washington has expressed approval of the reasoning in *Pike*. See

Palmer v. Massey-Ferguson, Inc., 3 Wash. App. 508, 476 P.2d 713, 719 (Wash.-App. 1970).