ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY, Plaintiff-Appellant,

v.

ARMCO STEEL CORPORATION and
Pullman Incorporated, Defendants-
Appellees.

PULLMAN INCORPORATED, Third-
Party Plaintiff-Appellant,

v.

MARYLAND CASUALTY COMPANY,
Third-Party Defendant-Appellee.

Nos. 73–1397, 73–1405.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1973.

Decided Jan. 4, 1974.

Rehearing Denied Feb. 6, 1974.

Charles J. O'Laughlin, Chicago, Ill., for St. Louis-San Francisco Ry. Co.

R. E. Keaney, St. Louis, Mo., for Armco Steel Corp.

Ralph C. Kleinschmidt, St. Louis, Mo., for Pullman, Inc.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The St. Louis-San Francisco Railway Company appeals from a final judgment for the defendants in a product liability case in the United States District Court for the Eastern District of Missouri. The defendant, Pullman Incorporated, also appeals from the trial court's adverse ruling on its third-party action for attorneys' fees and expenses against Maryland Casualty Company.

On December 19, 1969, a Frisco train was derailed with a resulting loss to Frisco of $745,000. The derailment was caused by the failure of a wheel manufactured and sold by Armco Steel Company to Pullman in 1966. Pullman, in turn, mounted the wheel on a railroad car and sold the car to Trailer Train Company.[1] That corporation leased the car to various railroads, including Frisco.

Frisco brought a diversity action for damages against Armco and Pullman. It alleged that the wheel that caused the derailment was a defective and unreasonably dangerous one. Pullman cross-claimed, seeking indemnity against Arm-

co in the event judgment was entered against it. Pullman, in a third-party action, sought to be declared an insured under Armco's liability insurance policy issued by Maryland and, thus, that it was entitled to a defense by that company.

The case was tried to the court on the theory that Missouri law governed. The court held that Missouri had adopted the theory of strict liability in tort as set forth in the Restatement (Second) of Torts § 402A (1965) in Keener v. Dayton Electric Manufacturing Co., 445 S. W.2d 362 (Mo.1969), and that Frisco was not entitled to recover under that theory because the wheel was not sold in a "defective condition unreasonably dangerous to the user or consumer * * *." It dismissed the indemnity cross-claim for mootness and held that Pullman could not recover its attorneys' fees and expenses under Armco's policy with Maryland because the policy excluded coverage to organizations otherwise covered who changed the form of the product or who performed installations in connection with the product.

*The Frisco Claim for Damages.*

The District Court found:

(1) The American Association of Railroads (AAR) establishes the specifications that railroad wheels must meet. These specifications are adopted by a vote of the members of the AAR, including Frisco.

(2) The wheel was manufactured in accordance with AAR specifications. It is normal for as-forged, hot-rolled wheels to develop scale pits on their surfaces during the manufacturing process. The pits may be removed by grinding or shot peening. The pits increase the possibility of metal fatigue. The existence of fatigue cracks in railroad wheels is not unusual. A manual of the AAR requires that a wheel showing signs of metal fatigue be removed from service.

---

1. Trailer Train is a corporation which is owned by and leases railroad cars to a number of railroads. Frisco owns approximately two and one-half percent of Trailer Train's outstanding stock.

(3) The wheel was inspected before sale, at the Armco factory, for compliance with AAR specifications by Armco's inspectors and other inspectors employed by the Pennsylvania Railroad and working under contract for Trailer Train. It was found to meet the specifications.

(4) Pullman smooth-bored a preexisting hole in the center of the wheel and placed the wheel on the axle of the railroad car which was delivered to Trailer Train.

(5) The railroad car was used by various railroads throughout the United States from May 13, 1966, until its derailment on December 19, 1969. It was inspected at each interchange by the railroad receiving the car. The inspection of the car included an inspection of the wheels.

(6) The wheel and its mate were subjected to unusual stress.[2]

(7) The wheel failed as a result of metal fatigue.

(8) The metal fatigue occurred at the cracks in the wheel which were in the vicinity of two of the scale pits on the wheel.

(9) Frisco fully contemplated all of the characteristics of the wheel.

The court concluded:

An essential requirement of a strict liability case is proof that the plaintiff was caused harm by reason of a product which when sold was in a defective condition unreasonably dangerous to the user or consumer or to his property. Within the concept of strict liability, a defective condition is one not contemplated by the user which will be dangerous to him. By "unreasonably dangerous" is meant that the product must be dangerous to an extent beyond that contemplated by those having the ordinary knowledge of the community as to the characteristics of the product. Railroads, including, of course, the plaintiff railroad, are the sole ultimate purchasers and users of railroad cars and wheels and the Court finds that Frisco fully contemplated all of the characteristics of the wheel in question and that the wheel was neither defective nor unreasonably dangerous.

Frisco argues on appeal that the trial court's finding that the wheel complied with AAR specifications was clearly erroneous. It contends, in the alternative, that the AAR standards were properly considered by the court in determining whether the wheel was unreasonably dangerous but should not have been determinative of that question. It contends that the court was required to go beyond the specifications and consider all of the evidence in determining whether the wheel was an unreasonably dangerous one; and that had the court done so, it would have found that the wheel was unreasonably dangerous as a matter of law.

The trial court's finding that the wheel complied with AAR specifications was not clearly erroneous. Indeed, it was supported by substantial evidence. Numerous witnesses, including those responsible for the inspection program and independent experts, testified that the wheel was not excessively pitted and that it met the specifications in every respect. While there was expert testimony to the contrary, the trial court—as the fact-finder—had the right to reject the contrary testimony as not persuasive. See, St. Louis Typographical Union No. 8 v. Herald Company, 402 F.2d 553, 557 (8th Cir. 1968).

We read the trial court's findings and conclusions more broadly than Frisco. It did not rest its judgment for the defendants solely on the ground that the wheel met AAR specifications. It concluded more generally that the wheel was not defective or unreasonably dangerous. This finding is consistent with

---

2. The trial court does not appear to have placed much reliance on this finding in reaching its conclusions. We, therefore, do not rest our opinion on the fact that this finding is supported by the record.

the position taken in the Restatement (Second) of Torts § 402A (1965) and is supported by the record.

■ The parties agree that § 402A [3] correctly states the Missouri law of strict liability in tort. That section, *inter alia,* requires that a product be "sold in a defective condition unreasonably dangerous to the user * * * or his property" in order for strict liability to apply. Comment *g* defines a "defective condition" as a "condition not contemplated by the ultimate consumer which will be unreasonably dangerous to him." *Id.* at 351. Comment *i*, in turn, provides that to be "unreasonably dangerous," "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* at 352.

Frisco maintains that if the trial court ruled that the wheel was not defective or unreasonably dangerous, it did so solely because it assumed that there could never be proof of defectiveness or unreasonable danger where the alleged defect was contemplated by the ultimate user. They point out that this position has been rejected by the courts in Washington and California. Palmer v. Massey-Ferguson, Inc., 3 Wash.App. 508, 476 P.2d 713 (1970); Pike v. Frank G. Hough Company, 2 Cal.3d 465, 85 Cal. Rptr. 629, 467 P.2d 229 (1970). Those cases are clearly distinguishable from the instant case. The courts there were concerned with the "obviousness" of danger in finished products which had been sold to consumers who had not participated in designing the product. The California Supreme Court ruled in *Pike* that the trial court erred in nonsuiting

the plaintiffs because the plaintiffs' evidence was sufficient to support a jury verdict in their favor. The Washington Court of Appeals held in *Palmer* (a negligence case) that the issue of the plaintiff's contributory negligence was for the jury to decide.

Frisco is not in the position of an unwary railway passenger. It is a company actively participating in the development of AAR specifications.

■ Moreover, we do not believe that the court operated under the suggested assumption. It was, however, convinced that the wheel was not defective or unreasonably dangerous. Railroad wheels do not last forever. Frisco's own employees testified that they were aware that wheels crack because of metal fatigue and for that reason, they regularly inspect the wheels and replace those found to be cracked. The evidence strongly supports the court's finding that the wheel was a normal one, and that it was not excessively pitted. Frisco had the burden of proving the wheel was defective and unreasonably dangerous. Under the circumstances present here, we do not believe the court erred in concluding that Frisco had failed to meet that burden.

■ Frisco is, in effect, urging this Court to go beyond the doctrine of strict liability and hold that Armco is an insurer and, thus, responsible in damages to a railway company whenever one of its wheels fails. We respond negatively to the urging.

*Pullman's Third-Party Claim Against Maryland.*

Pullman contends that it is covered by a liability insurance policy issued by

3. § 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

    (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

    (2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Maryland to Armco and that it is entitled to recover attorneys' fees and expenses. Maryland concedes that Pullman may, under certain circumstances, be an insured "organization" under the policy, but argues that it is not covered here because of the following exclusions:

1. The insurance does not apply to any person or organization who:

(a) Changes the form of such goods or products *out of which the accident arises;*

\* \* \* \* \* \*

(c) performs any demonstration, installation, servicing or repair operations, *out of which the accident arises,* in connection with such goods or products away from the premises of such person or organization. (Emphasis added.)

The District Court's findings of fact on this point were sketchy. It found that:

■ Pullman smooth bored a hole in the wheel in question and installed it on a [railway] car. [2] The accident occurred away from the premises of the party claiming coverage.[4]

The court concluded that "[t]he amount of expenses and attorneys' fees incurred are excluded under the terms of the policy."

Apparently, the court felt that Pullman was barred from receiving fees and expenses incurred by it in defending the action because Pullman had enlarged a hole in the wheel and installed the wheel on a railroad car.

■ We disagree. Pullman is not barred from recovering its defense costs from Maryland unless the modification and installation performed by Pullman caused or contributed to the accident. There is no evidence that they did so. To hold to the contrary would render the phrase "out of which the accident arises" meaningless.

[6] It has been stated that a contract of insurance, being the law between the parties, should have every stipulation construed as written. It being presumed that every condition was intended to accomplish some purpose, it is not to be considered that idle provisions were inserted. Each word is deemed to have some meaning, and none should be assumed to be superfluous. All portions of a policy should be considered in construing it. Accordingly, a court will attempt to give meaning and effect, if possible, to every word and phrase in the contract in determining the meaning thereof.

13 J. Appleman, Insurance Law and Practice § 7383 (1943).

■ It is reasonable to assume that the phrase "out of which the accident arises" within exclusion 1(c) means that when the accident arises out of the demonstration, installation, servicing or repair operation of the insurance organization, the insurance does not apply. If the accident does not arise out of those activities and if no other provision excludes coverage, the insurance does apply. Any other construction would be strained.

The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result. \* \* \*

Appleman, *supra,* § 7386.

Maryland could have easily and clearly limited its liability in a manner consistent with the trial court's construction of the exclusion provisions if that was indeed its intention. It did not do so. Moreover,

[i]t has been almost the unanimous holding of all courts that insurance contracts must be liberally construed in favor of a policyholder or beneficiary thereof, wherever possible, and strictly construed against the insurer in order to afford the protection

---

4. We need not discuss this second finding. It has no bearing on the resolution of the issues before us.

which the insured was endeavoring to secure when he applied for the insurance. (Footnote omitted.)

Appleman, *supra,* § 7401.[5]

Maryland argues further that if the exclusions do not apply to Pullman, its policy is excess over an umbrella policy issued to Pullman by Lloyds of London and "is unenforceable by Pullman until Pullman exhausts Lloyds' obligation to Pullman." Because the trial court found that the exclusion provisions of the Maryland policy barred recovery, it has not had an opportunity to rule on this issue. We, therefore, remand to the District Court for consideration of this issue. On such remand, the District Court shall also determine, if necessary, whether the amount of attorneys' fees and expenses claimed by Pullman is appropriate.

Affirmed in part, reversed in part, and remanded for further consideration. Costs on appeal will be taxed two-thirds to Frisco and one-third to Maryland.

---

5. Apparently, the trial court and the parties do not believe that the choice of law is crucial to the resolution of the "insurance" issues. The court, in its findings of fact and conclusions of law, did not indicate what state's law applies and the parties have not raised the question on appeal. We, therefore, rely on what appears to be the law applicable in most states.