Kenneth WALLACE, Sr., et
al., Appellants,

v.

WACO SCAFFOLD & EQUIPMENT
COMPANY, INC., et al.,
Respondents.

No. WD 31183.

Missouri Court of Appeals,
Western District.

Oct. 1, 1980.

Austin B. Speers, Kansas City, for appellants.

Thomas R. Larson, Kansas City, for Waco Scaffold and Equipment Co., Inc.; Morris, Larson, King, Stamper & Bold, Kansas City, of counsel.

Hollis H. Hanover, Kansas City, for Waco Scaffold and Shoring Co.

Before KENNEDY, J., Presiding, and PRITCHARD and SWOFFORD, JJ.

PRITCHARD, Judge.

Kenneth Wallace, Sr., sued upon strict liability upon a theory of warranty for injuries received by him when a scaffolding upon which he was standing collapsed. His wife, Martha Wallace, joined in the suit claiming damages for her loss of his services and companionship. Kenneth died later of causes unrelated to the occurrence upon which he had brought suit, and Martha, as administratrix of his estate, was substituted therein. The jury returned verdicts for both respondents.

Appellants pleaded that respondents impliedly warranted that the scaffolding was reasonably safe for the purpose intended—standing on it in doing high dry wall work, and that the warranty was breached in that the scaffolding "was defective, improperly designed and dangerous when being used by the ultimate user." Respondents pleaded Kenneth's contributory negligence (fault?) in assembling, mounting and using the scaffolding equipment.

Kenneth was a self–employed dry wall contractor, but he contracted out other than the finishing work which he did himself. On the date of his fall and injury, November 5, 1973, he was finishing dry wall in the AT&T Long Lines Building on 63rd Street. He had checked the scaffolding to make sure all wing nuts were tight, and the plywood to make sure that it fit properly, and found them to be okay. He was sanding from its top when the plywood gave away and he fell through the scaffolding to the floor. He had not been standing directly in the scaffolding's center when the plywood gave away.

The scaffolding was designed, manufactured, and distributed by respondent Waco Scaffold & Shoring Company, and it was called a "Speedtower". That company did not attach any type of metal clip or brace to the sides of the plywood sheet to increase stability, but it did place metal clips to the ends of the sheet to protect it. The scaffolding was further distributed to respondent Waco Scaffold and Equipment Company, which leased the instant scaffolding to the F. W. Goodnow Company, which supplied it to Kenneth for his work in finishing dry wall.

For appellants, Gary Friend testified. He was a self–employed mechanical engineer. In the prior 14½ years he did various types of design work and his background was in the construction equipment field. His design experience involved safety factors of products. He inspected a scaffolding at Waco Scaffolding Company, and as a result wrote a report concerning Safety Evaluation of the Waco Speedtower Scaffold relevant to Kenneth's accident. The substance of Friend's expert testimony and his opinion as to design defects was this: In load testing he found that a load of 176 pounds would cause the scaffold (plywood) to buckle in some instances. He tested with a 300 pound weight, assuming a 200 pound man (which was Kenneth's weight), and an equipment load. The plywood which was in evidence, and which the jury could have found was like the one in use at the time of Kenneth's fall, had started to fatigue because it was bowed in the middle, and thus was defective. One way to avoid the problem would be to use available three–quarter or one inch plywood. When it is one–quarter inch thicker it is three times stronger. It would be designed as one piece with cross braces welded into it, and figure out a way to restrain the plywood so it would not move or shift around.

Warren Caywood, Kenneth's co–worker, checked the scaffolding immediately after the accident and found that all bolts were tight, and that the plywood sheet which had collapsed did not have metal clips at the end. Witness Burt, president of Waco Scaffold and Equipment Company, testified that the scaffolding had a stripped eyebolt when it was returned to that company's warehouse. Burt also testified that the plywood sheet had metal clips on its ends when sent out by the company and when returned to it.

Appellants argued that the scaffolding was defectively designed and that there were inexpensive methods of correcting the problems. It was pointed out that there was no evidence of misuse of the scaffolding.

Instructions Nos. 2 and 4 were given as to the liability of each respondent. Those instructions were identical, and omitting respondents' names, and conforming to MAI 25.04, with modification as to the lease and sale by each respondent, in this form:

"Your verdict must be for plaintiff and against defendant [naming it], if you believe:

First, defendant [leased, sold] the scaffold, and plywood sheet in the course of defendant's business; and

Second, the scaffold and plywood sheet was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

Third, the scaffold and plywood sheet was used in a manner reasonably anticipated, and

Fourth, plaintiff was damaged as a direct result of such defective condition as existed when the scaffold and plywood was [leased, sold]."

During the course of its deliberations, the jury sent the court three questions. The first was a request that the jury be allowed to inspect the scaffold, which the court permitted. The second question had to do with the jury's review of witness Caywood's testimony which the court did not allow. No point is made of these first two rulings, but appellants contend error in the court's action with respect to the third question as shown by these proceedings:

"THE COURT: The jury has sent me Question No. 3 which is: 'In determining defective condition (instruction No. 4), should we consider safety of design?'

I propose to give the following answer: 'The law does not permit me to answer your question. You must be guided by the instructions.'

Is that agreeable with you for the plaintiff, Mr. Speers?

MR. SPEERS: I object to it, Your Honor. I think it should be further added that they should be guided by the instructions and the evidence from the witness stand.

THE COURT: What do you think about it, 'and the evidence'?

MR. HANOVER: It doesn't make sense.

THE COURT: They are asking about instructions.

MR. HANOVER: And the Judge is saying whatever there is, you have to get it out of the instructions.

MR. SPEERS: Well, I guess you have to apply the instructions to the evidence.

THE COURT: I could say instructions as a whole because they talk about the evidence and all, but I don't see any reason to do that; do you?

MR. SPEERS: No.

THE COURT: Any other suggestions?

MR. LARSON: I think what you have is the right way to do it, Judge.

THE COURT: All right. This is the way I'll do it."

Appellants' Point I is that the trial court erred to the prejudice of plaintiff because it did not answer "yes" to the third question of the jury. As above set forth, the only request made by the appellants was that the court include a reference of guidance by the evidence in its answer. In this situation, the contention is not properly before this court and may not be considered. Rule 84.13(a); *Bunting v. McDonnell Aircraft Corporation*, 522 S.W.2d 161, 168[11] (Mo. banc 1975).

Instruction No. 4, about which the jury inquired, related to respondent Waco Scaffolding & Shoring Company, the designer and manufacturer of the scaffolding. Appellants' Point II says that the jury's question clearly establishes that it did not understand that the term "defective condition", as used in MAI 25.04, includes "safety of design." It is said further that MAI 25.04 does not permit a definition of "'defective condition' and the jury did not and could not understand that 'safety of design' is a 'defective condition' under the applicable law and the plaintiff by evidence had proven design defect in the scaffolding and component parts." It is said that Instruction No. 4 was prejudicial and deprived appellants of a fair trial.

Quite apparently, Instruction No. 4 was given at the request of appellants as it submitted their theory of the case. What is lacking here is that there was no request for any modification of MAI 25.04 so as to encompass a submission of an ultimate fact of "defective design". The point is thus not presented for review, and it must, therefore, be ruled adversely to appellants. *City of Kennett v. Akers*, 564 S.W.2d 41, 50 (Mo. banc 1978); *Henson v. Jasinsky*, 251 S.W.2d 601, 603 (Mo.1952); *Massey v. Berlo Vending Co.*, 329 S.W.2d 772, 777 (Mo.1959) [duty to offer a "'clarifying or amplifying'" instruction where there is a belief that a situation is not clearly or sufficiently hypothesized].

In *Blevins v. Cushman Motors*, 551 S.W.2d 602, 607 (Mo. banc 1977), the court noted that strict liability in tort had been established for a product unreasonably dangerous as *manufactured* in *Keener v. Dayton Electric MFG. Co.*, 445 S.W.2d 362 (Mo. 1969), and that concept was applied to prod-

ucts unreasonably dangerous as *designed*, quoting from *Pike v. Frank G. Hough Co.*, 2 Cal.3d 465, 85 Cal.Rptr. 629, 636, 467 P.2d 229, 236 (banc 1970), " '[T]here is no rational distinction between design and manufacture in this context, since a product may be equally defective and dangerous if its design subjects protected persons to unreasonable risks as if its manufacture does so.' " What this quote undoubtedly refers to is that there is no distinction in the concept of *liability* for manufacturing defects and design defects. But there may be a difference in the manner of submitting to the jury the ultimate fact of a product defectively manufactured and one defectively designed. If so, that matter may be explored if, in a future design defect case MAI 25.04 is modified to encompass a submission of that ultimate fact so as to preserve the matter for review. Note the case of *Rinker v. Ford Motor Co.*, 567 S.W.2d 655 (Mo.App. 1978), where there was evidence that the fast idle cam broke because of inadequate design. The jury asked " 'Jury request definition of the word "defective" as it pertains to this specific case,' ", which question the court declined to answer. The court found that there could have been no harm in giving a strict liability (MAI 25.04) instruction as to Ford, as the jury could have found against it on a negligence instruction. The *Rinker* case points up the difficulties juries may be having with the term "defective condition" in MAI 25.04 when the evidence and submission theory is that of a design defect.

The judgment is affirmed.

All concur.