Filed 3/25/13  Salinas Energy Corp. v. American Pipe & Tubing, Inc. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SALINAS ENERGY CORPORATION,<br><br>    Defendant, Cross-Complainant and Appellant,<br><br>        v.<br><br>AMERICAN PIPE & TUBING, INC.,<br><br>    Cross-Defendant and Respondent. | F063636, F064071<br><br>(Super. Ct. No. CV-268189)<br><br>**OPINION** |

-ooOoo-

APPEALS from a judgment and order of the Superior Court of Kern County. Sidney P. Chapin, Judge.

Murchison & Cumming, Edward G. Farrell III, for Cross-Complainant and Appellant.

Acker & Whipple, Jerri L. Johnson and Erin M. Lahey for Cross-Defendant and Respondent.

-ooOoo-

Plaintiffs Darrell and Susan Wilson (collectively the Wilsons)[1] sued defendant and cross-complainant Salinas Energy Corporation (Salinas) for injuries Darrell Wilson sustained while attempting to repair a positive displacement pump on an oil lease Salinas owned. Salinas filed a cross-complaint against cross-defendant American Pipe & Tubing, Inc. (APT) for comparative equitable indemnity and declaratory relief.[2] The trial court granted APT's summary judgment motion on the cross-complaint. APT thereafter filed a motion for attorney fees under Code of Civil Procedure section 1038,[3] which the trial court granted. Salinas separately appealed from the judgment entered after the summary judgment motion was granted, and the amended judgment entered after the attorney fees motion was granted; at the parties' request, we consolidated the two appeals.

On appeal, Salinas argues (1) there are triable issues of material fact that prevent the grant of summary judgment, and (2) the post judgment order awarding attorney fees must be reversed because the motion was untimely and Salinas had reasonable cause to bring and maintain the cross-complaint against APT. As we shall explain, we affirm the judgment but reverse a portion of the attorney fees order.

## FACTUAL AND PROCEDURAL BACKGROUND

Salinas has an oil lease in San Ardo, California, on which are two water disposal wells, #7-27 and #16-27, each powered by a centrifugal or "jockey" pump that pushes the water into the ground. In September 2008, when one of the pumps malfunctioned, Salinas looked for a positive displacement pump, which pumps groundwater back into

---

[1] We will refer to the plaintiffs by their first names, not out of disrespect, but to avoid any confusion to the reader.

[2] The cross-complaint named other cross-defendants who are not parties to the judgment or this appeal.

[3] Undesignated statutory references are to the Code of Civil Procedure.

2.

the ground via the water disposal well, to replace it until the faulty jockey pump could be repaired.

Salinas contacted APT, a small company that buys and sells used oil field equipment, for help finding a pump to lease. APT was able to locate a pump, which Salinas agreed to lease from APT and ACES Enterprises, Inc. (ACES). According to Salinas, the pump was "sold" as part of a package that, in addition to the pump itself, included an electric motor and a "skid" or base. No piping or tubing, however, arrived with the pump, and there were no valves or pipes attached to it. APT was not asked to install the pump or to supply any apparatus, including a pressure relief device. APT did not know or control how Salinas would install the pump, and was not responsible for installing it.

Salinas hired Pacific Trucking, a Paso Robles construction company, to install the pump on well #7-27 on September 30 and October 1, 2008. Installing a positive displacement pump involves connecting the pump to the wellhead with the necessary piping, tubing and valves as the owner or pump installer sees fit. Positive displacement pump systems generally have a pressure relief device, a safety valve that prevents the pump system from over-pressurizing by relieving the pressure at a set point, and which is necessary to assure safe and efficient functioning. During this installation, Salinas's senior operator Bren Randolph noted a pressure relief device was not installed on the pump system and recognized its absence was a safety concern.

In mid-November 2008, Pacific Trucking, under the supervision of Salinas's supervisor Frankie Strange, disconnected the pump from well #7-27 and installed it on well #16-27, although Salinas never operated the pump on that well. About one month later, Salinas instructed Pacific Trucking to remove the pump from well #16-27, and took the pump off the lease.

On June 17, 2009, Salinas brought the pump back to the lease and instructed Pacific Trucking to install it on well #7-27. On June 23, Salinas's operations manager

3.

Jon Harding met with Keith Morris of ACES and Steve Brown of APT to discuss a vibration problem with the pump. After this meeting, Morris contacted Darrell, an experienced pump mechanic, who agreed to repair the pump. Morris hired him as an independent contractor.

On the morning of June 26, 2009, Darrell arrived at the Salinas lease, turned on the pump and observed the vibration issue. He took readings on both disposal wells, changed the valves in the pump and then tested the pump to see if it was running correctly. Later that afternoon, Salinas's production foreman Jerry Burwick saw Darrell receive a call on his cell phone, which Burwick believed was from Morris. When Darrell finished the call, he told Burwick the person on the phone suggested closing, or partially closing, the master valve to put "back pressure" on the pump to test it further. Burwick saw Darrell partially close the master valve on the wellhead and then have a second conversation on his cell phone. Darrell told Burwick that Morris instructed him to partially close the master valve and chain it in place while simultaneously increasing the back pressure on the pump. Burwick told Darrell that such a procedure would be unsafe because the system might explode if the back pressure increased with the master valve partially closed.

At Darrell's request, Burwick drove over to well #16-27, about 150 yards away, and shut down the charge pump powering that well to see if that made any difference to well #7-27. As he was driving back, Burwick heard a loud explosion and saw Darrell fall to the ground; Darrell had been seriously injured by a ball valve that had flown off the wellhead and struck him in the abdomen.

In mid-July 2009, Salinas hired safety consultant Terri Judkins to investigate the incident, determine the cause and prepare a report of her findings (the Judkins report). Judkins found the incident was partly due to Salinas's failure to abide by its safety policies, particularly the "stop work" policy that requires any person on the lease who witnesses an unsafe practice to stop lease operations. Judkins also attributed the incident

4.

to a failure to install a pressure relief device on the discharge side of the pump system. Greg Wagner, Salinas's resident manager/vice president, sent the report to Salinas's headquarters in Perth, Australia.

*The Pleadings*

On August 24, 2009, Darrell and his wife, Susan, filed a complaint to recover damages for Darrell's injuries and Susan's loss of consortium, naming Salinas as the sole defendant. The complaint contained four causes of action: (1) negligence, (2) negligence per se, (3) strict products liability, and (4) negligent design, manufacture and assembly. In the first cause of action for negligence, the Wilsons alleged that Salinas negligently created and concealed a dangerous condition on its premises, and failed to warn persons working on the jobsite "that the wellhead, pump(s), pipeline and piping were not equipped with pressure gauges and/or pressure relief valves and/or properly maintained, calibrated and set pressure gauges and/or pressure relief valves." The second cause of action for negligence per se was based on Salinas's negligent failure to "employ, install, maintain, calibrate and set pressure gauges and/or pressure relief devices and valves on the wellhead, pump(s)[,] pipeline and piping[,]" in violation of California Code of Regulations, title 8, section 6634. The third cause of action for strict products liability alleged Salinas designed, manufactured, assembled, supplied and sold defective oilfield products, including oilfield wellheads, pumps, pipelines, piping, valves and other products intended for use by the general public, without inspecting for defects. Finally, the fourth cause of action for negligent design alleged that Salinas negligently designed, manufactured and assembled oilfield wellheads, pumps, pipelines, piping and valves, which were not equipped with pressure gauges or pressure relief devices.

On November 5, 2009, Salinas filed its answer to the complaint, as well as a cross-complaint containing three causes of action, which named as cross-defendants APT, ACES, IEQ Industries and Keith Morris. The first cause of action, for full equitable indemnity, was asserted only against IEQ Industries. The second and third causes of

5.

action, for comparative equitable indemnity and declaratory relief, were asserted against all defendants.  In the comparative equitable indemnity claim, Salinas alleged that if the Wilsons obtained judgment against Salinas, its liability must be reduced to the extent its proportionate degree of culpability bears to the total fault of the cross-defendants.  In the declaratory relief claim, Salinas requested a determination of its right to receive a reduction, offset, apportionment, contribution or indemnification from the cross-defendants.  On March 18, 2010, APT filed its answer to the cross-complaint.

*The Summary Judgment Motions*

In January 2011, Salinas brought a motion for summary judgment or, in the alternative, summary adjudication on the complaint.  A hearing on the motion was held on April 7, 2011, and the trial court's minute order filed on April 12, 2011.  The trial court denied summary adjudication as to the first and second causes of action for negligence and negligence per se, but granted summary adjudication on the third and fourth causes of action for strict products liability and negligent design.  The trial court found that California Code of Regulations, title 8, section 6634, imposed a non-delegable duty on operators of positive displacement pumps to equip them with a pressure relief device, and it was uncontroverted that the pump at issue, which Salinas owned and operated, was not so equipped, thereby raising a triable issue of fact as to whether Salinas affirmatively contributed to Darrell's injuries.  The trial court also found a triable issue of fact regarding Salinas's direct participation based on Burwick's retained control.  The trial court noted the Wilsons had conceded the motion directed to the third and fourth causes of action, as they did not dispute any of the facts in Salinas's separate statement.

On April 22, 2011, APT filed a motion for summary judgment on the cross-complaint.  APT asserted it was not legally obligated to indemnify Salinas for the Wilsons' claims in the complaint because it could not be liable for (1) negligence, as Darrell and Salinas were both sophisticated users of the pump, and operating the pump without a pressure relief device was an obvious danger, and (2) negligence per se, as APT

6.

had no duty under California Code of Regulations, title 8, section 6634, to employ, install, maintain, calibrate or set the pressure relief valve, and the trial court previously found Salinas had a non-delegable duty under this regulation to equip the pump system with a pressure relief valve. APT also contended it did not negligently create or conceal a dangerous condition on Salinas's premises, as it did not have control over Salinas's lease or the pump once Salinas took possession of the pump. Finally, APT asserted that Salinas's own internal investigation report by Judkins, which was only discovered when Wagner was deposed on March 25, 2011, did not attribute any fault to APT arising from the incident and, despite this, Salinas cross-complained against APT.

In its opposition, Salinas argued that the issue of installation was irrelevant and a "red herring[,]" as "the pertinent issue [was] APT's liability as a seller, not as an installer." Salinas asserted APT had a duty, as the seller of the pump, to warn Salinas that a pressure relief device was necessary for the pump's safe operation. In support, Salinas offered the expert declaration of Edward J. McKenna, Jr., the president of a corporation engaged in the business of selling process equipment for handling air, gas, liquids and dry bulk solids, in which he stated that (1) the pump required "some sort of pressure protection" which may be a relief valve mounted directly on the pump, an inline pressure relief valve, a torque limiting device, a rupture disk or other device; (2) the standard of care in the industry requires the seller to warn or at least discuss with the customer the need for a pressure relief device, regardless of the customer's sophistication; (3) the warning could be given by way of a technical service manual or an operations and maintenance manual from the manufacturer; and (4) APT did not provide any such warnings in connection with the sale of the pump. Salinas argued McKenna's declaration established APT's fault and precluded summary judgment. Salinas also argued the motion should be denied because APT's obvious danger and sophisticated user defenses were "riddled with disputed facts."

7.

In its reply brief, APT argued it did not have a duty to warn Salinas about the need for a pressure relief valve or, alternatively, there was no causal relationship between the failure to warn and Wilson's injury, because Salinas already had actual and constructive notice that a pressure relief valve was necessary. APT contended Salinas was judicially estopped from asserting strict products liability as a basis for indemnity because Salinas successfully argued in its own motion for summary judgment that the strict products liability cause of action failed as a matter of law in part because the Wilsons could not present evidence that the pump was defective.

After oral argument, the trial court took the matter under submission. On July 15, 2011, it issued a minute order granting the motion. The trial court noted that APT's motion was on all of the claims asserted against it in the cross-complaint, namely comparative equitable indemnity and declaratory relief, and the only claims that remained in the complaint were negligence and negligence per se. Noting that the "obvious danger" and "sophisticated user" defenses asserted in APT's motion must be pled as affirmative defenses in APT's answer, and that APT failed to plead them, the trial court denied APT's motion for summary adjudication as to the second and third causes of action in the cross-complaint with respect to the complaint's negligence claim on these theories.

The trial court found, however, that APT had met its burden of showing that Salinas could not satisfy an element of the negligence cause of action, namely that APT had a duty to install the pressure relief valve or warn of its absence, and Salinas failed to raise a triable issue of fact on this issue. The trial court explained that the complaint's first cause of action alleged that Salinas did not install a pressure relief valve on the well and did not warn Darrell of its absence, therefore, through the cross-complaint and Salinas's answer to the complaint, Salinas sought comparative indemnity from APT for its failure to install the valve and to warn Darrell of the valve's absence, rather than for APT's alleged failures against Salinas. The trial court found APT had shown Salinas

8.

could not meet an element of the first cause of action – that APT owed Darrell any duty – because APT was not responsible for installing a pressure relief valve and did not install the pump. The trial court further found that Salinas failed to raise a triable issue of material fact regarding APT's duty, as it was undisputed the pump was not sold with a pressure relief device and Salinas did not present any evidence that the pump should have come with a pressure relief device. While Salinas asserted such a device could be installed on the pump, that was irrelevant to the issue of whether APT had a duty to install it or warn Darrell of its absence. The trial court acknowledged Salinas offered additional facts through McKenna's declaration that APT had a duty to warn Salinas, however it found this evidence irrelevant to whether APT owed Darrell a duty to install, or warn about the absence of, a pressure relief device.

The trial court rejected Salinas's argument that APT had a duty to warn Salinas that a device was needed on the pump since (1) that issue was not alleged in the cross-complaint or the complaint, (2) the complaint only concerned the existence of a pressure relief valve on the well and the failure to warn of its absence, and (3) Salinas failed to show how APT's failure to warn Salinas caused or contributed to the incident, since it was Salinas's duty, under California Code of Regulations, title 8, section 6634, to install the device even if APT failed to provide a warning.

With respect to the complaint's negligence per se claim, the trial court found Salinas did not dispute that APT was not the operator of the positive displacement pump and Salinas offered no facts or argument with regard to this claim. Accordingly, the trial court found there was no triable issue of fact on the second and third causes of action in the cross-complaint with respect to the complaint's second cause of action for negligence per se.

APT prepared a written order granting the motion, which the trial court signed and filed on July 28, 2011. Judgment in APT's favor was entered that same day, which awarded costs to APT.

9.

*The Motion for Attorney Fees*

On August 12, 2011, APT filed a motion for attorney fees under section 1038, on the grounds that Salinas brought and maintained its cross-complaint against APT without reasonable cause and without a good faith belief there was a justifiable controversy under the facts and law. APT sought to recover a total of $172,791.29, comprised of $139,150.30 in attorney fees and $33,640.99 in expert witness fees. APT asserted its motion was timely under section 1038 and California Rule of Court, rule 3.1702(1).

On the merits, APT argued that Salinas did not bring or maintain its cross-complaint against APT in good faith as it knew from the Judkins report that a pressure relief device was not installed on the pump system; according to the trial court's April 12, 2011 ruling on Salinas's summary judgment motion, Salinas had a non-delegable duty to install the pressure relief device; and there was no indication APT played any part in the incident or had an affirmative duty to install the device, as the Judkins report did not attribute any blame to APT. APT further asserted that Salinas's bad faith was shown by its failure to produce the Judkins report during discovery despite numerous requests for all incident reports; APT first learned about the report's existence on March 25, 2011, during Wagner's deposition.

APT asserted Salinas did not have reasonable cause to bring or maintain the cross-complaint because Darrell was injured due to the lack of a pressure relief device, and the facts and testimony by Salinas's employees overwhelmingly showed it was Salinas's failure to install the device that directly caused the incident. APT attached deposition testimony of Salinas's employee Randolph and Pacific Trucking owner Gary Ritchie. Randolph testified he did not know if Burwick understood the importance of having a safety device on the pump system; before the pump was installed he recommended to Burwick that a pressure safety valve also be installed; Burwick did not think one was needed because the well was a low pressure well; and Randolph also told Harding his recommendation and Burwick's response, adding that if something should fail, there was

10.

no protection and something would "blow up" or break. Ritchie testified that when Harding asked him if a pressure relief valve was needed, Ritchie responded it would not be a bad idea, and Harding said he was wondering because Randolph had mentioned it to him. Ritchie also testified he looked in the parts room to see if there was a pressure relief valve, but he could not find one, and he told Harding they did not have a valve.

Salinas opposed the motion, arguing the cross-complaint was brought and maintained in good faith and with reasonable cause as it raised legitimate legal issues. Salinas asserted it filed the cross-complaint for equitable indemnity against APT because APT, as the pump's seller, was in the chain of distribution, thereby making APT potentially liable for the Wilsons' injuries under theories of negligence or strict products liability. Salinas argued the Judkins report did not establish bad faith because it did not state that it was Salinas's legal responsibility to install a pressure relief device, which was a legal determination not made until the trial court ruled on Salinas's summary judgment motion on April 12, 2011. Salinas further argued it thereafter maintained the cross-complaint in good faith and with reasonable cause because, even if APT did not have a duty to install the pressure relief valve, it arguably owed the Wilsons a duty to warn about the need for a pressure relief device, yet failed to so warn. Salinas asserted that entry of judgment in its favor on the Wilsons' products liability and negligent design claims did not render maintenance of the action on the cross-complaint unreasonable, as these causes of action were dismissed on narrow grounds inapplicable to APT. With respect to the amount of fees APT requested, Salinas contended they were unreasonable as patently excessive and unnecessary to the conduct of the litigation.

In support of its opposition, Salinas attached a copy of its notice of motion and memorandum of points and authorities on its motion for summary judgment, which show that Salinas brought the motion on the Wilsons' claims for products liability and negligent design on the grounds that (1) Salinas was not engaged in the business of designing, manufacturing and assembling the pump, wellhead, piping system and valves

11.

at issue, (2) Salinas did not place those items into the stream of commerce for use by a consumer and, in any event, Darrell was not a consumer, and (3) the Wilsons could not show the products were defective, as the absence of a pressure relief device did not render the pump, wellhead or piping system defective.

In reply, APT argued Salinas knew when it filed the cross-complaint that owners and operators of positive displacement pumps were required to install pressure relief devices, as Randolph admitted having such knowledge, the regulation had been in existence since its enactment in 1959, and from the Judkins report, Salinas knew the absence of a pressure relief device caused or contributed to the incident. APT further argued Salinas did not maintain the cross-complaint in good faith and with reasonable cause as the evidence adduced during discovery all pointed to Salinas as the party responsible for installing pressure relief devices on its pump systems, and no evidence emerged to suggest wrongdoing by APT that could support a negligence claim or that the pump was defective to support a products liability claim.

Finally, APT asserted that, at a minimum, Salinas should have dismissed its cross-complaint against APT immediately upon the court's April 12, 2011 ruling dismissing the complaint's strict liability and negligent design claims, as Salinas thereafter could not reasonably believe the strict products liability claim survived against APT and Salinas did not bring a separate cause of action for strict products liability. APT pointed out that it had asked Salinas twice to dismiss it from the cross-complaint in exchange for a waiver of costs; first on April 12, 2011, after it received the Judkins report, and second on April 19, 2011, based on the summary judgment ruling.

At the hearing on the motion, the trial court began by announcing its tentative decision to grant the motion from July 24, 2009, the date of the Judkins report, "finding lack of reasonable basis upon which to bring the cross complaint." The court explained that the state of the information known to Salinas was that responsible individuals within Salinas's operations considered whether to install a pressure relief valve and decided

12.

against it, the pump was the only product APT provided and it was not responsible for providing the pressure relief valve, Salinas had a non-delegable duty to install the pressure relief valve according to the regulation, and the state of information at the time was that there was no pressure relief valve which was a system, not a pump, item. The court asked the parties to focus comments on the issue, "in terms of the subjective state of mind," when it became unreasonable to maintain the action, considering Randolph's deposition in February 2011 and the April 2011 decision on the summary judgment motion.

Salinas's attorney asserted that Salinas's theory of APT's liability in the case was that, as the seller of the pump, APT owed a duty to the plaintiffs to warn Salinas, the purchaser of the pump, that the pump was dangerous and should be equipped with a pressure relief device. Salinas's attorney argued Salinas did not sue APT for an improper purpose; its theory was supported by the law and expert testimony.

The court asked APT's attorney whether the unreasonable cause began at the inception of the case or later. APT's attorney responded it was at inception, since Salinas had a duty to perform a cursory investigation and review the Judkins report, and had it done so it would have found that the pressure relief device goes on the system, not the pump, and the incident happened because of the lack of a pressure relief device. Following oral argument, the trial court took the matter under submission.

On August 15, 2011, APT filed a memorandum of costs. On September 1, 2011, Salinas filed a motion to tax costs, which APT opposed. Oral argument on the motion was held on October 4, 2011, after which the court took the matter under submission.

On November 3, 2011, the trial court issued a minute order granting APT's motion for attorney fees and denying Salinas's motion to tax costs, both without explanation. An amended judgment was filed, which awarded APT costs of $66,891.51 and attorney fees of $139,150.30. Salinas timely appealed from the original judgment and the orders granting the motion for attorney fees and denying the motion to tax costs.

13.

# DISCUSSION

*Motion for Summary Judgment*

We review an order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) We independently review the record and apply the same rules and standards as the trial court. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.) The trial court must grant the motion if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) We view the facts in the light most favorable to the nonmoving party and assume that, for purposes of our analysis, its version of all disputed facts is correct. (*Sheffield v. Los Angeles County Dept. of Social Services* (2003) 109 Cal.App.4th 153, 159.) A moving defendant can establish its entitlement to summary judgment by either (1) demonstrating that an essential element of the plaintiff's case cannot be established, or (2) establishing a complete defense. (§ 437c, subd. (o).)

Salinas contends the trial court erroneously granted APT's motion for summary judgment on the cross-complaint's second cause of action for equitable indemnity premised on the Wilsons' negligence claim. Significantly, Salinas does not challenge the trial court's granting of summary adjudication on the claim of negligence per se; neither does it challenge the trial court's finding that APT did not owe Darrell a duty to install the pump or directly warn him of its absence. Instead, Salinas repeats virtually verbatim the argument it made below, namely that its claim for equitable indemnity survives because McKenna's declaration creates a triable issue of fact on whether APT breached its duty as the pump's seller to warn Salinas that a pressure relief device was needed.

14.

"[T]he doctrine of comparative equitable indemnity is designed to do equity among defendants. Under the equitable indemnity doctrine, defendants are entitled to seek apportionment of loss between the wrongdoers in proportion to their relative culpability so there will be 'equitable *sharing* of loss between multiple tortfeasors.'" (*GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 426 (*GEM Developers*).) A condition of equitable indemnity is that "there must be some basis for tort liability against the proposed indemnitor," usually involving breach of a duty owed to the underlying plaintiff. (*BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 852.) The doctrine applies only among defendants who are jointly and severally liable to the plaintiff. (*Ibid.*)

To state a cause of action for indemnity, the indemnitee, here Salinas, must plead that the indemnitor, here APT, is jointly at fault for plaintiff's injury and the indemnitee (Salinas) has or will incur damages for which the indemnitor (APT) is responsible. (*Expressions at Rancho Niguel Assn. v. Ahmanson Developments, Inc.* (2001) 86 Cal.App.4th 1135, 1139.) Since an indemnity action is premised upon a joint legal obligation to another for damages, the "indemnitor may invoke any substantive defense to liability that is available against the injured party" as against the indemnitee. (*Children's Hospital v. Sedgwick* (1996) 45 Cal.App.4th 1780, 1787 (*Children's Hospital*).) The right to indemnity does not depend on the indemnitor having been named by the plaintiff. (*GEM Developers*, *supra*, 213 Cal.App.3d at p. 428.) Nor does that right depend on the facts pled in the underlying complaint, as an action for indemnity may "seek apportionment of the loss on any theory that was available to the plaintiff upon which the plaintiff would have been successful." (*Id.* at p. 430.)

By its cross-complaint, Salinas sought equitable indemnity from APT based on the complaint's allegations. At the time of APT's summary judgment motion, those allegations included only negligence to the Wilsons for failing to install a pressure relief valve on the pump system and failing to warn Darrell of the valve's absence. That

15.

Salinas was seeking comparative fault against APT only for the negligence alleged in the complaint is confirmed by Salinas's answer in which it asserted as an affirmative defense that "third parties were careless and negligent in and about the matters alleged in the complaint." Salinas did not seek to recover for third party negligence toward itself.

Salinas contends that APT is jointly and severally liable to the Wilsons because APT did not warn Salinas of the danger of using the pump without a pressure relief valve. This contention assumes APT owed a duty to the Wilsons to give such a warning to Salinas. The authority Salinas cites to support this contention is *Pike v. Frank G. Hough Co.* (1970) 2 Cal.3d 465 (*Pike*), which concerned the negligent design of a manufacturer's total product. In *Pike*, our Supreme Court held that a manufacturer has a duty to install safety devices to protect against even an obvious danger and there can be strict liability in tort for unreasonably dangerous design, including products that are unreasonably dangerous because they are designed without necessary safety devices and those that are supplied without a suitable warning. (*Pike*, *supra*, at pp. 473-474, 476-477.) From this, Salinas asserts the Wilsons could have brought an action against APT for failing to warn Salinas of the need for a pressure relief device.

Salinas, however, never alleged this theory of liability in its cross-complaint. Moreover, since judgment had been granted in Salinas's favor on the complaint's products liability causes of action, no such theory remained in the complaint. It is the cross-complaint's allegations that delimit the scope of the issues on summary judgment. (*Couch v. San Juan Unified School Dist.* (1995) 33 Cal.App.4th 1491, 1499.) The reviewing court need not address theories that were not raised in the pleadings. (*Williams v. California Physicians' Service* (1999) 72 Cal.App.4th 722, 738), and a plaintiff may not defeat a summary judgment motion by producing evidence to support claims outside the issues framed by the pleadings. (*City of Hope Nat. Medical Center v. Superior Court* (1992) 8 Cal.App.4th 633, 639.) As Salinas never pled it was entitled to equitable indemnity because APT owed a duty to the Wilsons to warn Salinas of the need for a

16.

pressure relief device, it could not avoid summary judgment be claiming this theory was available to it.

In addition, Salinas ignores the fact that the Wilsons did bring such a claim when they sued Salinas for strict products liability and negligent design. Judgment in favor of Salinas was entered on these causes of action in part because Salinas asserted there was no evidence the pump was defective. To now assert that the Wilsons could have claimed that the pump was defective flies in the face of Salinas's prior position that the pump was not defective. (See, e.g., *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 767 ["a party may be judicially estopped ""'from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'""'"].)

In any event, in rejecting Salinas's argument on this point, the trial court also found there was no evidence that APT's failure to warn Salinas caused or contributed to the incident, as Salinas had a non-delegable duty to install the device. (See *Huitt v. Southern California Gas Co.* (2010) 188 Cal.App.4th 1586, 1604 [to be liable under a strict liability theory based on failure to warn, the plaintiff must prove the defendant's failure to warn was a substantial factor in causing his or her injury; there is no liability if the injury would have occurred even if adequate warnings had been given].) Salinas makes no argument in its appellate briefs pertaining to this reason for dismissing this claim. Accordingly, even if we assume APT owed a duty to the Wilsons to warn Salinas about the need for a pressure relief device, we would nonetheless be compelled to affirm the order granting summary judgment. "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Here, Salinas failed to address how the trial court erred in concluding legal grounds separate from the issue of the duty to warn Salinas supported summary

17.

judgment. "When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' (*Atchley v. City of Fresno* [(1984)] 151 Cal.App.3d [635,] 647; accord, *Berger v. Godden* [(1985)] 163 Cal.App.3d [1113,] 1117 ['failure of appellant to advance any pertinent or intelligible legal argument ... constitute[s] an abandonment of the [claim of error'].)" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Salinas also argues there are triable issues of fact regarding the obvious danger and sophisticated user defenses APT raised in its summary judgment motion. We do not address this issue, however, because the trial court denied the motion on those grounds.

In sum, Salinas has failed to show the trial court erred in granting the summary judgment motion.

*Motion for Attorney Fees*

The trial court awarded APT its attorney and expert witness fees for this case pursuant to section 1038. Salinas contends the order must be reversed because the motion for the award was untimely made, in violation of the statute. Salinas also contends that the trial court erred in awarding the fees because it brought and maintained its cross-complaint against APT in good faith and with reasonable cause.

Section 1038, subdivision (a) provides, in pertinent part, that in any proceeding for express or implied indemnity in a civil action, "the court, upon motion of the defendant or cross-defendant, shall, at the time of the granting of any summary judgment, . . . dismissing the moving party other than the . . . cross-complainant . . . or at a later time set forth by rule of the Judicial Council adopted under Section 1034, determine whether or not the . . . cross-complainant . . . brought the proceeding with reasonable cause and in the good faith belief that there was a justifiable controversy under the facts and law which warranted the filing of the . . . cross-complaint . . . . If the court should determine that the proceeding was not brought in good faith and with reasonable cause, an additional issue shall be decided as to the defense costs reasonably and necessarily

18.

incurred by the party . . . opposing the proceeding, and the court shall render judgment in favor of that party in the amount of all reasonable and necessary defense costs, in addition to those costs normally awarded to the prevailing party.  An award of defense costs under this section shall not be made except on notice contained in a party's papers and an opportunity to be heard."

Section 1038, subdivision (b) defines "'defense costs'" to include attorney fees and expert witness fees "where reasonably and necessarily incurred in defending the proceeding."  Section 1038, subdivision (c) provides that the section is applicable "only on motion made prior to the discharge of the jury or entry of judgment, and any party requesting the relief pursuant to this section waives any right to seek damages for malicious prosecution.  Failure to make the motion shall not be deemed a waiver of the right to pursue a malicious prosecution action."

We begin with the timeliness issue.  Here, the order granting summary judgment was issued on July 15, 2011; judgment was entered on July 28, 2011; and the motion for attorney fees filed on August 12, 2011.  Although APT raised the issue of timeliness in its moving papers below by arguing the motion was timely, Salinas did not challenge the timeliness of the motion in the trial court and instead addressed only the motion's merits.  Salinas raises this issue for the first time on appeal.  APT contends that by failing to object, Salinas has forfeited its right to argue the motion's timeliness on appeal.  We agree.

"'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.'"  (*Children's Hospital and Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 776.)  Salinas, however, contends we must consider this issue because the time limits set forth in section 1038 are both mandatory and jurisdictional.  Section 1038 certainly expresses a mandatory time within which the motion must be filed, as it provides that the section "shall be applicable only on motion made prior to the discharge of the jury or entry of

19.

judgment." (§ 1038, subd. (c).) One appellate court has construed this section to mean that a motion for costs should be filed at the earliest practical time before discharge of the jury or entry of judgment. (*Gamble v. Los Angeles Dept. of Water and Power* (2002) 97 Cal.App.4th 253, 259 (*Gamble*).)

That the time for filing the motion is mandatory, however, does not mean that the trial court loses jurisdiction to consider an untimely motion. Salinas does not cite any authority that supports its assertion that the trial court here lacked jurisdiction to hear the motion. While the court in *Gamble* addressed the issue of when a motion to recover defense costs under section 1038 must be made, it did not address whether the trial court loses jurisdiction to decide an untimely motion and nothing in the language of section 1038 suggests a trial court loses jurisdiction in such a situation.

Comparing section 1038 to the filing of a memorandum of costs, Salinas points out that the time provisions relating to the filing of a memorandum of costs are mandatory, though not jurisdictional. (*Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co.* (1990) 223 Cal.App.3d 924, 929.) Salinas assumes that means that a party may not forfeit a timeliness issue with respect to a cost memorandum. Salinas is wrong. Since the time provisions relating to the filing of a memorandum of costs are not jurisdictional, there is no jurisdictional defect in the trial court's award of costs on an untimely memorandum. (See *Gunlock Corp. v. Walk on Water, Inc.* (1993) 15 Cal.App.4th 1301, 1304 [noting that because time limitation is not jurisdictional, a trial court has broad discretion in allowing relief from a late filed memorandum of costs where there is an absence of a showing of prejudice to the opposing party]; see also *Douglas v. Willis* (1994) 27 Cal.App.4th 287, 289 [the failure to file a motion to tax costs constitutes a waiver of the right to object]; *Santos v. Civil Service Bd.* (1987) 193 Cal.App.3d 1442, 1447 ["it was Santos's obligation to file a motion to tax costs in the instant action. The city did not have an obligation to file a motion before it sent its cost bill to Santos. Santos's failure to file a motion to tax costs constitutes a waiver of the right to object."].)

20.

Thus, where a memorandum of costs is untimely filed, it is incumbent on the opposing party to file a motion to tax costs raising such an objection, otherwise the objection is forfeited. Applying that logic here, the trial court did not lose jurisdiction to decide the section 1038 motion merely because it was untimely. Instead, it was Salinas's duty to object on that basis. By failing to do so, Salinas forfeits any challenge to the untimeliness of the motion on appeal. We recognize we have discretion to consider issues of law as applied to undisputed facts, even if not raised in the trial court. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24.) We decline to do so here, however, where APT presented the issue below and Salinas failed to challenge it. (See *Resolution Trust Corp. v. Winslow* (1992) 9 Cal.App.4th 1799, 1810 [whether to consider an issue raised for first time on appeal "'is largely a question of the appellate court's discretion'"].)

Turning to the merits, under section 1038, "defendants may recover defense costs . . . if the trial court finds the plaintiffs lacked *either* reasonable cause or good faith in filing and maintaining the lawsuit." (*Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 853 (*Kobzoff*).) In other words, "before denying a section 1038 motion, a court must find the plaintiff brought or maintained an action in the good faith belief in the action's justifiability *and* with objective reasonable cause." (*Kobzoff, supra,* 19 Cal.4th at p. 862, italics added.) "The 'good faith' and 'reasonable cause' requirements pertain not only to the action's initiation, but also its continued maintenance." (*Id.* at p. 853, fn. 1.) Put another way, "[s]ection 1038 applies not only to initiation of the action but also to steps to pursue it after it has been filed." (*Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, 931, disapproved on another ground by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7.)

"'*Good faith,* or its absence, involves a factual inquiry into the plaintiff's subjective state of mind [citations] . . . . [T]he question on appeal [is] whether the evidence of record was sufficient to sustain the trial court's finding. [¶] *Reasonable*

*cause* is to be determined objectively, as a matter of law, on the basis of the facts known to the plaintiff when he or she filed or maintained the action. Once what the plaintiff (or his or her attorney) knew has been determined, or found to be undisputed, it is for the court to decide "'whether any reasonable attorney would have thought the claim tenable. . . .'" [Citations.] . . . [R]easonable cause is subject to de novo review on appeal.'" (*Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 183.) A cross-defendant may not recover section 1038 costs simply because it won a summary judgment motion; "victory does not per se indicate lack of reasonable cause." (*Kobzoff*, *supra*, 19 Cal.4th at p. 856.)

Here, the record is not clear as to the basis for the trial court's granting of the motion, as it did not issue a written explanation of its ruling. It appears from the court's tentative ruling at oral argument on the motion, however, that it was considering only whether there was reasonable cause to bring and maintain the cross-complaint. In any event, as we shall explain, we conclude that Salinas had objective reasonable cause to bring the cross-complaint against APT, and there is no evidence Salinas did not do so in good faith. Once summary adjudication was granted to Salinas on the products liability claims, however, Salinas did not have reasonable cause to maintain the cross-complaint.

Salinas argues that when it filed its cross-complaint against APT in November 2009, it had a reasonable, good faith belief that APT, as the pump's seller, could be liable for the Wilsons' injuries under theories of strict or negligent products liability – claims which were alleged in the complaint. "Under the strict products liability doctrine, '[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.' [Citation.] Such liability insures 'that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect

22.

themselves.'" (*Arriaga v. CitiCapital Commercial Corp.* (2008) 167 Cal.App.4th 1527, 1534 (*Arriaga*).)

In addition to manufacturers, "anyone identifiable as 'an integral part of the overall producing and marketing enterprise' is subject to strict liability[,]" including retailers engaged in the business of distributing goods to the public. (*Arriaga, supra,* 167 Cal.App.4th at p. 1534.) Strict products liability can also extend to others involved in the vertical distribution of consumer goods, such as lessors of personal property, wholesale and retail distributors, and licensors, who, though not necessarily involved in the final product's manufacture or design, are responsible for passing the product down the line to the consumer. (*Id.* at 1534-1535; see also *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 560 [observing that a manufacturer, distributor or retailer is liable in tort if a manufacturing or design defect of its product causes injury while the product is being used in a reasonably foreseeable way].) Moreover, a manufacturer or seller of a product has a duty to exercise reasonable care in its design so its buyer/consumer can safely use the product as intended; the duty of care extends to all persons within the range of potential danger. (*Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 141.)

Salinas asserts that because APT was in the pump's chain of distribution, it potentially was liable to the Wilsons for strict or negligent products liability and therefore Salinas had reasonable cause to bring the cross-complaint against APT for equitable indemnity. We agree. The complaint's third cause of action for strict products liability specifically alleged that Salinas and unnamed defendants "supplied and sold defective oilfield products" including "oilfield wellheads, pumps, pipelines, piping, valves and other products" which were intended for the general public's use without inspection for defects, and that Darrell "was severely injured while performing pipeline maintenance work on the defective and dangerous wellhead, pipeline, piping, valve and other products" when the pipeline exploded. Based on these allegations, which included an

allegation that the pump was defective, the knowledge that APT was the seller of the pump, and the law regarding the reach of strict products liability to suppliers of defective products, a reasonable attorney could well have included APT as a cross-defendant in Salinas's cross-complaint for equitable indemnity on the basis that the pump was itself defective and contributed to the incident that caused Darrell's injuries.

APT asserts the cross-complaint was not brought in good faith or with reasonable cause because (1) before it filed the cross-complaint, Salinas was aware of its legal obligation to install a pressure relief device on the positive displacement pump system, yet failed to install one; (2) the Judkins report showed the lack of a pressure relief device on the pump system contributed to the incident and stated, as a future corrective measure, a pressure relief device should be installed at critical locations; (3) the Judkins report did not mention or place any responsibility for the incident on the pump's seller; and (3) there was no defect in the pump, which was "never the issue in this case."

Even if Salinas was aware of its obligation to install a pressure relief device and that one was never installed, and it knew that the absence of the device contributed to the incident, it was still reasonable to bring a cross-complaint against APT since the complaint alleged the pump was defective. While the Judkins report states that the "root cause analysis" included the absence of the pressure relief valve on the discharge side of the pump, and the report does not mention any concerns about the pump's seller, it does not appear that Judkins's investigation included looking into whether there were any defects in the components of the pump system, including the pump. As Wagner testified at his deposition, the report's purpose was to investigate the root cause of the incident, such as where Salinas's policies failed, rather than to investigate the mechanical issues. Since the Judkins report was not a comprehensive one intended to discover all causes of the incident, it was not unreasonable for Salinas to sue APT on the cross-complaint for equitable indemnity based on the possibility that the pump itself was defective. Although

24.

APT asserts there was never an issue regarding whether the pump was defective, the complaint placed that in issue by alleging its defectiveness.

For these reasons, we conclude that Salinas had reasonable cause to bring the cross-complaint against APT. In addition, there is no evidence that Salinas lacked a good faith belief that it was justified in doing so, as it reasonably could believe that a defect in the pump may have contributed to the incident.

The issue remains whether Salinas had reasonable cause to maintain the cross-complaint after the trial court's April 12, 2011 rulings (1) denying summary adjudication to Salinas on the Wilsons' negligence claims after finding Salinas had a non-delegable duty to install the pump, and (2) granting summary adjudication to Salinas on the complaint's causes of action for strict products liability and negligent design. Salinas asserts that even if it had a non-delegable duty to install the pump, APT had concurrent, joint and several liability as the pump's seller for failing to warn Salinas of the need for a pressure relief device. Salinas asserts APT owed this duty to the Wilsons independent of Salinas's duty to install the device.

The only support Salinas cites for this theory is case law concerning strict and negligent liability for defective products, such as *Pike*, *supra*, 2 Cal.3d 465, and *Persons v. Salomon North America, Inc.* (1990) 217 Cal.App.3d 168. Salinas also asserts its theory is supported by the undisputed fact that APT did not warn Salinas of the need for a pressure relief device and by its expert, McKenna, who stated in his declaration opposing APT's summary judgment motion that the standard of care in the industry requires a pump seller to warn or discuss with the customer a need for a pressure relief device regardless of the customer's sophistication. Salinas asserts it could maintain this claim even after the complaint's products liability claims were dismissed because it moved for summary adjudication of these claims on "narrow grounds not applicable" to APT, and the complaint still alleged in the first cause of action for negligence that Salinas and the unnamed defendants "negligently failed to warn persons working on the subject job

25.

site[,]" including Darrell, that the wellhead, pump, pipeline and piping were not equipped with a pressure relief device.

Even on de novo review, we presume the judgment is correct and it is Salinas's burden to show error. (*Jones v. Department of Corrections and Rehabilitation* (2007) 152 Cal.App.4th 1367, 1376.) Salinas has failed to convince us it had reasonable cause to continue to maintain its equitable indemnity claim against APT after Salinas was granted summary adjudication in April 2011 on the complaint's products liability claims. Salinas's grounds for the summary adjudication motion on the products liability claims were: (1) Salinas was itself a consumer of the allegedly defective products, rather than an entity that placed the products in the stream of commerce, (2) Darrell was not a consumer or ultimate user, as he did not purchase the pump or piping system, and (3) even if the Wilsons could establish Salinas placed the pump or other products into the stream of commerce, they could not show that any of these items were defective, as the mere fact that the pump or piping system were not equipped with a pressure relief device does not mean they were defective. The Wilsons did not present any facts to contradict these assertions, thereby conceding Salinas's entitlement to summary adjudication on these causes of action.

After Salinas's summary adjudication motion was granted, there were no remaining allegations in the complaint or cross-complaint that APT breached a duty it owed either to the Wilsons, or to Salinas, to warn Salinas of the need for a pressure relief device. While Salinas asserts the complaint's first cause of action for negligence contains such an allegation, it alleges that Salinas negligently failed to warn Darrell of the *absence* of a pressure relief device, not that the pump was defective because there was a failure to warn that such a device was needed on the pump.

Salinas could not reasonably take the position that APT could still be liable to the Wilsons on a products liability claim based on APT's failure to warn Salinas of the need for a pressure relief device because: (1) Salinas obtained summary adjudication on the

products liability claims in part because it asserted the pump was not defective; (2) Salinas did not bring a separate cause of action against APT for failing to warn it of the absence of the pressure relief device; and (3) there were no remaining products liability claims in the complaint. Salinas does not explain how the Wilsons could have maintained such a claim against APT given the procedural posture of this case. Accordingly, we conclude that Salinas failed to satisfy its burden of showing error in the trial court's implied ruling that it did not have probable cause to continue its action against APT after the trial court's April 12, 2011 ruling on Salinas's summary judgment motion.

We therefore reverse the trial court's order granting APT's motion for attorney fees from the beginning of APT's involvement in the case through the April 12, 2011 trial court order which denied summary judgment to Salinas on the complaint, granted Salinas summary adjudication on the third and fourth causes of action in the complaint and denied Salinas summary adjudication on the first and second causes of action in the complaint. We affirm the trial court's order granting APT's motion for attorney fees for fees APT incurred after the April 12, 2011 order. Since we will need to remand the matter to the trial court to determine the amount of fees to which APT is entitled, we do not reach the issue of whether the amount of fees awarded was reasonable. Instead, Salinas may address this issue with the trial court on remand as appropriate.

## DISPOSITION

The judgment is affirmed. The order granting APT's motion for attorney fees is reversed to the extent it awarded fees up to April 12, 2011. The order granting APT's motion for attorney fees is affirmed to the extent it awarded fees after April 12, 2011.

27.

The case is remanded for the trial court to determine the amount of fees to which APT is entitled.  The parties shall bear their own costs on appeal.

_____

Gomes, J.

WE CONCUR:


_____

Levy, Acting P.J.


_____

Franson, J.